# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 06/17/2025 12:08:18 PM.
30-2025-01490396-CU-BT-CJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Keith J. Wesley (SBN 229276)
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor Los Angeles, CA 90067
TELEPHONE NO.: 310-274-7100 FAX NO.: 310-275-5697
EMAIL ADDRESS: kwesley@ellisgeorge.co,
ATTORNEY FOR *(Name):* Plaintif Memory Lane, Inc.

***FOR COURT USE ONLY***

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana 92701
BRANCH NAME: Central Justice Center

CASE NAME: Memory Lane, Inc. v. Best Western International, Inc., et al.

## CIVIL CASE COVER SHEET

☒ **Unlimited** (Amount demanded exceeds $35,000)
☐ **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 30-2025-01490396-CU-BT-CJC
JUDGE: Judge Michael Strickroth
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* Eight (8)
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 16, 2025

Keith J. Wesley
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANTS:**
***(AVISO AL DEMANDADO):***
BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC,; AND DOES 1 THROUGH 10

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
MEMORY LANE, INC.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Orange
Central Justice Center
700 Civic Center Drive West
Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso):*
30-2025-01490396-CU-BT-CJC
Judge Michael Strickroth

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ELLIS GEORGE LLP, Keith J. Wesley (SBN 229276)
2121 Avenue of the Stars, 30th Floor, Los Angeles, California 90067 Tel. 310-274-7100 / Fax: 310-275-5697)

DATE: 06/17/2025 DAVID H. YAMASAKI, Clerk of the Court Clerk, by K. Climer, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

ELLIS GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Memory Lane, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**PLAINTIFF MEMORY LANE INC.'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial Date: None Set<br><br>**Assigned for All Purposes**<br>Judge Michael Strickroth |

Plaintiff Memory Lane, Inc. ("MLI") alleges as follows for its Complaint against defendants Best Western International, Inc. ("BWI"), Twin Tier Hospitality L.L.C. ("TTH") and Cleveland Strongsville Hospitality LLC ("CSH"), operating under the trade name Best Western Plus Strongsville ("BWPS") (collectively, "Best Western" or "Defendants"):

**INTRODUCTION**

1. MLI is a sports memorabilia dealer. Among other things, MLI takes on consignment merchandise, including vintage baseball cards, that owners (*i.e.*, consignors) wish to place on sale through auctions.

2. In April 2024, MLI sent Joe Tomasulo to attend a trade show being held in Strongsville, Ohio, at the Strongsville Sports Collectors Convention (the "SSCC"). Mr. Tomasulo attended the SSCC, in part, to display 54 rare vintage baseball cards that were in the winter 2024 auction, which were valued at over $2 million (the "Vintage Cards").

3. For Mr. Tomasulo's hotel accommodations, MLI reserved a room at Best Western's location in Strongsville, Ohio. Best Western nationally advertises its commitment to ensuring the safety of its guests and the property guests entrust to Best Western for safekeeping. Based on the cumulative impact of Best Western's advertising and, specifically advertising targeting residents of Orange County, California, MLI relied on Best Western's advertised assurance to conclude that Best Western was a trustworthy national brand whose advertising was truthful and not misleading.

4. Relying on the cumulative effect of Best Western's deceptive advertising campaigns, MLI entrusted its Vintage Cards to Best Western for safekeeping. Best Western, however, allowed one of its personnel, Jacob Paxton, to steal the Vintage Cards. The Strongsville Police Department ("SPD") later apprehended Mr. Paxton, who admitted to the theft and pled guilty. On or about December 16, 2024, the Cuyahoga County Court of Common Pleas sentenced Mr. Paxton to a prison term of four to six years. In SPD body camera footage, Best Western's general manager admitted that Best Western failed to take reasonable precautions to safeguard MLI's property because the loss of such a property is just "an insurance claim" to Best Western.

5. Best Western's advertising was patently misleading because it failed to disclose

that Best Western does not undertake any steps to honor its advertised commitment for a uniform guest experience characterized by the safety of its guests and their property as a top priority. Best Western's advertising also failed to disclose that Best Western's internal policy is that property guests entrust to Best Western for safekeeping is just "an insurance claim" and unworthy of any safeguards to protect against loss or theft. Best Western's advertising is also likely to mislead reasonable consumers about the relationship between it and BWPS.

6. Had Best Western's advertising not been false and misleading, MLI would have selected another hotel brand that honors advertised commitments for the safety of guests and their property.

**PARTIES**

7. Plaintiff MLI is a California corporation with its principal place of business in Orange County, California.

8. MLI is informed and believes, and thereon alleges, that defendant BWI is an Arizona corporation with its principal place of business in Phoenix, Arizona.

9. MLI is informed and believes, and thereon alleges, that defendant TTH is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio.

10. MLI is informed and believes, and thereon alleges, that defendant CSH is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio, doing business under the trade name BWPS.

11. The true names and capacities of the defendants sued herein as Does 1 through 10 are currently unknown to MLI, who therefore sues such defendants by fictitious names. Each of the defendants designated as a Doe defendant is legally responsible for the unlawful acts alleged herein. MLI will seek leave of court to amend the complaint to reflect the true names and capacities of the Doe defendants when such identities become known.

12. Defendants' actions combined to create an indivisible harm such that each of the Defendants is jointly and severally liable for the injuries MLI suffered as alleged herein. Defendants' wrongful conduct as alleged herein induced MLI to believe that each of the Defendants had apparent or ostensible authority to act on behalf of one another. Defendants,

furthermore, knew about and agreed amongst each other to engage in the wrongful acts and omission alleged herein.

13. There now exists, and at all relevant times, there has existed, a unity of interests between all defendants such that separate personalities no longer exist, and it would be inequitable to treat the acts alleged herein as the acts of a single defendant alone. Defendants were conceived and intended, and have been used, as a device to avoid liability. Defendants constitute but one enterprise, and this enterprise has been so handled such that it should respond, as a whole, for damages arising from their conduct.

## ALLEGATIONS

14. Defendants solicit business in California, and Defendants entered into a business transaction with MLI in Orange County, California, when MLI booked a room with BWPS.

15. Defendants work in concert to advertise the Best Western brand to prospective consumers who reside in California and are interested in booking a hotel room at, among other locations, BWPS. Among other things, Defendants advertise Best Western's commitment to superior customer care, excellent customer experience, and a myriad of other benefits Best Western offers.

16. Best Western deploys long-term advertising schemes that seek to persuade customers to book hotel rooms and other services through Best Western based on the cumulative impact of the advertising. Best Western's advertising creates the perception that a single enterprise owns, operates, controls, supervises, and manages Best Western branded hotels. Among other things, Best Western advertises on https://www.bestwestern.com/en_US.html. The website address for BWPS specifically is https://www.bestwestern.com/en_US/book/hotels-in-strongsville/best-western-plus-strongsville-cleveland/propertyCode.36178.html. Best Western's advertising creates the impression that Best Western branded hotels are subject to centralized and unified operational control and standards.

17. Best Western engages in advertising campaigns directed to California residents, such as, for example, "Life's a Trip" and "I'm Doing Alright, Three Bonus Nights," including those residing in Orange County. Best Western's advertising campaigns include all forms of

media such as paid internet advertising, television, radio, and print media. The aim of Best Western's advertising campaigns is to solicit prospective customers – including those in this County – to visit its website and complete transactions for room rentals, including hotel accommodations in Strongsville, Ohio.

18. The specific BWI website page that advertises the BWPS property states that its "outstanding service makes us one of the most preferred hotels in the Cleveland Airport area." It further describes its amenities and advertises BWPS as "a full-service hotel near the Cleveland Airport, [which] offers business travelers a quiet, convenient location near many local and national businesses and corporate headquarters." It invites "business traveler[s]" to "make your reservation today and secure your room at our Strongsville hotel and experience all the comfort and amenities of home." Best Western further advertised secure storage for guest property at its front desk.

19. Best Western's advertised representations and assurances induced MLI to conclude that Best Western would undertake reasonable precautions to ensure the safety of its Vintage Cards, if it selected BWPS for its hotel accommodations. Best Western's advertising further induced MLI to rely on Best Western's assurance of the uniform quality of Best Western branded locations and Best Western's uniform commitment to each Best Western location's adherence to company-wide standards. Best Western's advertising also induced MLI to conclude that it could rely on Best Western's assurances concerning the safety and reliability of the services it offered. Best Western's advertising did not disclose that Best Western views property guests entrust to Best Western for safekeeping as just "an insurance claim" and unworthy of any safeguards to protect against loss or theft.

20. MLI accordingly decided to ship the Vintage Cards from Orange County, California, to BWPS for safekeeping, which it did by FedEx on April 16, 2024. BWPS received the Vintage Cards on or about April 17, 2024, and it agreed to accept delivery of the Vintage Cards. In so doing, BWPS undertook a duty to exercise reasonable care for the safekeeping of the Vintage Cards until MLI's representative took possession of them. BWPS had secured areas where it could have stored the Vintage Cards during the time they were within BWPS' possession, custody and control.

21. When Mr. Tomasulo attempted to pick up the Vintage Cards on April 18, 2024, BWPS stated that the Vintage Cards could not be found. The SPD responded to a call concerning the loss of the Vintage Cards the same day. The body camera of the SPD officer who responded to the call recorded his interaction with BWPS' general manager.

22. BWPS' general manager admitted on camera that BWPS received the package, and he admitted that BWPS does not place packages in secure storage because the loss of customer property is just "an insurance claim" for BWPS. Instead, BWPS simply placed MLI's package on a desk with unfettered access to any passer-by. Even though BWPS has surveillance cameras at other locations around the hotel, BWPS' general manager further admitted on camera that BWPS left the Vintage Cards in an area where there was no surveillance camera or footage.

23. As the SPD's investigation revealed, between the April 17, 2024, delivery and Mr. Tomasulo's effort to take delivery on April 18, 2024, BWPS allowed one of its personnel, Jacob Paxton, to steal the Vintage Cards. Mr. Paxton was one of BWPS' personnel on duty during the time of the theft and acted with apparent or ostensible authority on behalf of Best Western. Mr. Paxton later admitted to the theft and was sentenced to a prison term of four to six years.

24. Best Western knew or should have known that retaining Mr. Paxton as an employee created a particular risk or hazard of the theft of valuable items its guests entrusted to BWPS for safekeeping, including MLI's Vintage Cards. BWPS knew, or should have known, that a substantial number of its guests were staying at BWPS to attend the SSCC and were shipping rare and valuable collectibles to BWPS for safekeeping. Indeed, BWPS segregated a block of rooms specifically for guests attending the SSCC trade show called the "Sports Card Show" block of rooms. BWPS' records reflect that forty-six individuals reserved rooms within the "Sports Card Show" block of rooms, many of whom reserved multiple rooms. On information and belief, BWPS knew that, prior to the Vintage Card theft, a series of thefts had occurred at BWPS, including packages BWPS guests entrusted to it for safekeeping, yet Best Western did not notify any of the guests in the Sports Card Show block of this critical fact. On information and belief, the thefts coincided with BWPS' employment of Mr. Paxton, and BWPS personnel suspected that Mr. Paxton was responsible for the thefts.

25. BWPS failed to conduct an adequate investigation of Mr. Paxton prior to hiring him. On information and belief, Mr. Paxton was the night shift auditor for the Comfort Inn prior to his employment with BWPS. During Mr. Paxton's employment, the Comfort Inn experienced a string of thefts of packages customers shipped to the Comfort Inn. The Comfort Inn suspected Mr. Paxton of the thefts. As the Comfort Inn was on the verge of terminating Mr. Paxton, he quit. As the Vintage Card theft demonstrates, BWPS failed to take reasonable precautions to guard against the risk of theft Mr. Paxton posed.

26. It took the SPD over a month to recover the stolen Vintage Cards. At the time of the theft, bids on the stolen cards were already outstanding. The theft prevented MLI from completing any sales or returning the stolen Vintage Cards to their owners. The SPD never recovered two of the 54 Vintage Cards, and the cards that it did recover were and are worth less because of their involvement in the theft. Because of the theft, MLI was also forced to undertake a $1.8 million loan to repay the owners who had consigned their baseball cards to MLI for sale, which cost MLI $125,907.43 in interest. The theft, furthermore, harmed MLI's reputation in the marketplace for sports memorabilia, which created a measurable loss in MLI's revenue. BWPS' wrongful conduct and omissions also damaged MLI in connection with expenditures it made in its efforts to retrieve the Vintage Cards.

27. Defendants work in concert to exercise control of the business, operations, training, management, supervision, administration, and procedures of BWPS and engage in profit sharing. Defendants work in concert to control brand quality standards, use and placement of Best Western's name, BWPS' hotel reservation systems, brand loyalty programs, websites, advertising and marketing, and employment policies and procedures. Defendants' control over BWPS is directed towards attaining more revenue and commercial success.

28. MLI reasonably believed that BWPS was synonymous with the Best Western brand, and that anyone acting on behalf of BWPS acted with apparent or ostensible authority to act on behalf of the Best Western. Best Western advertises itself as a unified, nationwide hotel brand through consistent branding, standardized logos, uniform reservation systems, loyalty programs, and national advertising programs. Best Western creates the impression that its properties are part

of a single, cohesive enterprise. A reasonable consumer, exposed to Best Western's advertising and branding materials, would believe they are dealing directly with Best Western.

29. Best Western's misrepresentations and omissions are likely to deceive consumers, who reasonably rely on the advertised trustworthiness, legitimacy and consistency of the Best Western brand in making hotel reservations.

**FIRST CAUSE OF ACTION**

**(Unfair Business Practices in Violation of Cal. Bus. Prof. Code §17200, et seq.)**

30. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

31. Defendants' advertising was likely to deceive or mislead reasonable customers.

32. MLI reasonably relied on and was damaged by Defendants' unlawful, unfair, fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

33. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair, and/or fraudulent business practices in that MLI entrusted its property to Defendants for safekeeping based on Defendants' advertised assurances.

34. MLI suffered injury in fact, and has lost money and property, as result of Defendants' unlawful, unfair, fraudulent and/or deceptive business practices, including (but not limited to) the value of two of the Vintage Cards that were never recovered, the decline in value of the Vintage Cards that were recovered, $125,907.43 in interest on the loan MLI was forced to undertake, the expenditures MLI made in its efforts to retrieve the Vintage Cards, and the amounts paid to stay at a hotel that did not provide the services it advertised.

35. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI for restitution in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**(False Advertising in Violation of Cal. Bus. Prof. Code §17500)**

36. MLI hereby realleges and incorporates by reference the allegations set forth in

paragraphs 1 through 35 as though fully set forth herein.

37. Through their advertising, Defendants intended to offer to members of the public their advertised services.

38. Defendants' advertising was likely to deceive or mislead reasonable consumers. Defendants knew, or in the exercise of reasonable care should have known, that their advertising was untrue or misleading.

39. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair, fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

40. MLI suffered injury in fact, and has lost money and property, as result of Defendants' unlawful, unfair, fraudulent and/or deceptive business practices, including (but not limited to) the value of two of the Vintage Cards that were never recovered, the decline in value of the Vintage Cards that were recovered, $125,907.43 in interest on the loan MLI was forced to undertake, the expenditures MLI made in its efforts to retrieve the Vintage Cards, and the amounts paid to stay at a hotel that did not provide the services it advertised.

41. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI for restitution in an amount to be proven at trial.

## **THIRD CAUSE OF ACTION**

**(Fraud)**

42. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43. Through their advertising, Defendants made the misrepresentations and omissions alleged herein.

44. Defendants' advertising was materially false and misleading, and MLI did not know the true facts.

45. Defendants made these misrepresentations and omissions to induce MLI to enter into a business transaction with Best Western and intended to deceive MLI.

46. When Defendants made their false representations and wrongful omission, Defendants knew or recklessly disregarded that each such representation and omission was materially false and misleading, and that Defendants had no intention of performing the representations made.

47. MLI reasonably relied on, and was damaged by, Defendants' false and misleading advertising because it induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

48. Defendants' misrepresentations and omissions were a substantial factor in causing MLI's harm.

49. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

50. In performing the wrongful acts alleged above, Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of MLI's rights, reputation and business interests. By reason thereof, MLI is entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

## FOURTH CAUSE OF ACTION

**(Negligent Misrepresentation)**

51. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52. Through their advertising, Defendants made the misrepresentations and omissions alleged herein.

53. Defendants made these misrepresentations and omissions to induce MLI to enter into a business transaction with Best Western.

54. At the time Defendants made the misrepresentations and omissions, Defendants had no reasonable ground to believe that such representations where true.

55. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair,

fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

56. Defendants' misrepresentations and omissions were a substantial factor in causing MLI's harm.

57. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**FIFTH CAUSE OF ACTION**

**(Negligence)**

58. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59. Mr. Tomasulo, as an MLI representative, was a guest of Best Western, and MLI entrusted Best Western with the safekeeping of its property by delivering it to Best Western.

60. Best Western accepted MLI's property for safekeeping, which created a duty to exercise the degree of care a reasonably careful person would use to safeguard MLI's property from theft or loss during the time it was in Best Western's possession, custody and control.

61. Best Western failed to exercise reasonable care to safeguard MLI's property.

62. A reasonable person would have foreseen that leaving MLI's property in a location with unrestricted access to anyone passing by, and without any surveillance, created an unreasonable risk that someone would wrongfully take MLI's property.

63. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**SIXTH CAUSE OF ACTION**

**(Negligent Hiring, Supervision, or Retention)**

64. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

65. Best Western hired Mr. Paxton, whose job functions enabled him to have access to customers' valuables, including packages that Best Western received and held on customers'

behalf.

66. Mr. Paxton was unfit to have access to valuables that customers entrusted to Best Western for safekeeping.

67. Best Western knew, or should have known, that Mr. Paxton could not be trusted to have access to valuables that its customers, including MLI, entrusted to Best Western for safekeeping.

68. Mr. Paxton's unfitness for his employment with Best Western harmed MLI.

69. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**SEVENTH CAUSE OF ACTION**

**(Bailment)**

70. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71. MLI delivered its property to Best Western.

72. Best Western accepted receipt of MLI's property for safekeeping.

73. Best Western's receipt of MLI's property was incident to Best Western's business with MLI and for the mutual benefit of Best Western and MLI.

74. Best Western had a duty to exercise reasonable care to ensure the return of MLI's property to MLI.

75. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**EIGHTH CAUSE OF ACTION**

**(Conversion)**

76. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77. MLI had a right to possession of the Vintage Cards.

78. Best Western substantially interfered with MLI's right to possession of the Vintage Cards by allowing its employee access to the Vintage Cards.

79. MLI did not consent to the theft of the Vintage Cards.

80. The theft of the Vintage Cards harmed MLI in the form of the interest it paid on the loan it was required to take out to cover the value of the Vintage Cards, the value of the two Vintage Cards that were never recovered, the depreciation in value of the Vintage Cards that where recovered, and the loss of revenue arising from the reputational harm attributable to the theft of the Vintage Cards.

81. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

## PRAYER FOR RELIEF

WHEREAS, MLI prays for the following relief against Defendants:

1. For compensatory damages according to proof but no less than $2 million;

2. For restitution according to proof;

3. For exemplary and punitive damages in an amount to be determined by the trier of fact;

4. For pre-judgment and post-judgment interest on all damages awarded by this Court at the maximum legal rate as allowed by law;

5. For reasonable attorneys' fees and costs of suit incurred herein as allowed by law; and

6. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

MLI hereby demands a jury trial on all issues so triable.

DATED: June 16, 2025

ELLIS GEORGE LLP
Keith J. Wesley

By: [signature]
KEITH J. WESLEY
Attorneys for Plaintiff Memory Lane, Inc.

# SUPERIOR COURT OF CALIFORNIA

**COUNTY OF ORANGE**

**Superior Court of California, County of Orange**

700 W. Civic Center Drive
Santa Ana, CA 92702

**E-Filing Transaction #:** 11499642

## PAYMENT RECEIPT

**Receipt #:** 13465993

**Clerk ID:** kclimer **Transaction No:** 13637749 **Transaction Date:** 06/18/2025 **Transaction Time:** 05:19:44 AM

| Case Number | Fee Type | Due Date | Qty | Fee Amount$ | Balance Due | Amount Paid | Remaining Balance |
|---|---|---|---|---|---|---|---|
| 30-2025-01490396-CU-BT-CJC | 194 - Complaint or other 1st paper | 06/17/2025 | 1 | $435.00 | $435.00 | $435.00 | $0.00 |

Sales Tax: $0.00

**Total:** **$435.00** **Total Rem. Bal:**

E-Filing : - Nationwide

E-Filing: $435.00

Total Amount Tendered: $435.00

Change Due: **$0.00**

Balance: **$0.00**

A $45 fee may be charged for each returned check, electronic funds transfer or credit card payment.

**COPY**

Electronically Filed by Superior Court of California, County of Orange, 07/25/2025 01:39:00 PM.
30-2025-01490396-CU-BT-CJC - ROA # 11 - DAVID H. YAMASAKI, Clerk of the Court By E. efilinguser, Deputy Clerk.

Daniel Ryan (State Bar No. 206214)
dryan@dodddelcollo.com
**DODD DELCOLLO LLP**
29 Broadway, Suite 2311
New York, NY 10006
Telephone: (858) 402-0209
Facsimile: (858) 402-0209

Attorneys for Defendant Best Western International, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**PROOF OF SERVICE**<br><br>**Date: November 24, 2025**<br>**Time: 1:45 p.m.**<br>**Dept.: C15**<br>**Before The Honorable Michael Strickroth**<br><br>**Reservation No.: 74617672**<br><br>Action Filed: June 17, 2025<br>Trial Date: None Set |

/ / /

/ / /

/ / /

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. My business address is 29 Broadway, Suite 2311, New York, NY 10006 and my business email address is mhurt@dodddelcollo.com. On July 25, 2025, I served the documents listed on the attached list of **DOCUMENTS SERVED**. I served such documents on the persons listed on the attached **SERVICE LIST** by the following means:

| | |
|---|---|
| | **By personal service.** I personally delivered the documents to the persons at the addresses listed on the attached **SERVICE LIST**. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses on the attached **SERVICE LIST** and:<br>[ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.<br>[ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.<br>I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at N/A. |
| | **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) in the attached **SERVICE LIST**. I placed the envelope for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier. |
| | **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed on the attached **SERVICE LIST**. (A declaration by the messenger accompanies this Proof of Service.) |
| | **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax number(s) listed on the attached **SERVICE LIST** at N/A.<br>No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. |
| X | **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service address(es) listed in the attached **SERVICE LIST.** |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 25, 2025

Marissa Hurt
(Name of Declarant)

(Signature of Declarant)

DODD DELCOLLO LLP

**DOCUMENTS SERVED**

1. **DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**
2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**
3. **DECLARATION OF DANIEL RYAN, ESQ. IN SUPPORT OF DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**
4. **[PROPOSED] ORDER GRANTING DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**

**SERVICE LIST**

| | |
|---|---|
| Keith J. Wesley, Esq.<br>ELLIS GEORGE LLP<br>2121 Avenue of the Stars, 30th Floor<br>Los Angeles, CA 90067<br>Tel: (310) 274-7100 / Fax: (310) 275-5697<br>Email: kwesley@ellisgeorge.com<br><br>Attorneys for Plaintiff, MEMORY LANE, INC. | |

DODD DELCOLLO LLP

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | *FOR COURT USE ONLY*<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE*<br>**Jun 18, 2025**<br>Clerk of the Court<br>By: **K. Climer,** Deputy |
| PLANTIFF: Memory Lane, Inc. | |
| DEFENDANT: Best Western International, Inc. et.al. | |
| Short Title: MEMORY LANE, INC. VS. BEST WESTERN INTERNATIONAL, INC. | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2025-01490396-CU-BT-CJC |

Please take notice that a(n), Case Management Conference has been scheduled for hearing on 02/09/2026 at 08:30:00 AM in Department C15 of this court, located at Central Justice Center.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giảI đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: K Climer, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** MEMORY LANE, INC. VS. BEST WESTERN INTERNATIONAL, INC.

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **30-2025-01490396-CU-BT-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 06/18/2025. Following standard court practice the mailing will occur at Sacramento, California on 06/20/2025.

Clerk of the Court, by: ______________________, Deputy

ELLIS GEORGE LLP
2121 AVENUE OF THE STARS # 30TH FLOOR
LOS ANGELES, CA 90067

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
Central Justice Center
700 W. Civic Center Drive
Santa Ana, CA 92702

**SHORT TITLE:** Memory Lane, Inc. vs. Best Western International, Inc.

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER: **30-2025-01490396-CU-BT-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that that the following document(s), Notice of Hearing OC, was transmitted electronically by an Orange County Superior Court email server on June 18, 2025, at 5:25:01 AM PDT. The business mailing address is Orange County Superior Court, 700 Civic Center Dr. W, Santa Ana, California 92701. Pursuant to Code of Civil Procedure section 1013b, I electronically served the document(s) on the persons identified at the email addresses listed below:

ELLIS GEORGE LLP
kwesley@ellisgeorge.com

Clerk of the Court, by: Fred Acosta, Deputy

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | *FOR COURT USE ONLY*<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE*<br>**Jun 18, 2025**<br>Clerk of the Court<br>By: **K. Climer,** Deputy |
| PLANTIFF: Memory Lane, Inc. | |
| DEFENDANT: Best Western International, Inc. et.al. | |
| Short Title: MEMORY LANE, INC. VS. BEST WESTERN INTERNATIONAL, INC. | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2025-01490396-CU-BT-CJC |

Please take notice that a(n), Case Management Conference has been scheduled for hearing on 02/09/2026 at 08:30:00 AM in Department C15 of this court, located at Central Justice Center.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: K Climer, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** MEMORY LANE, INC. VS. BEST WESTERN INTERNATIONAL, INC.

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **30-2025-01490396-CU-BT-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 06/18/2025. Following standard court practice the mailing will occur at Sacramento, California on 06/20/2025.

Clerk of the Court, by: _[signature]_ , Deputy

ELLIS GEORGE LLP
2121 AVENUE OF THE STARS # 30TH FLOOR
LOS ANGELES, CA 90067

Case: 1:25-cv-01710-JPC Doc #: 1-2 Filed: 07/29/25 29 of 62. PageID #: 36

Daniel Ryan (State Bar No. 206214)
dryan@dodddelcollo.com
**DODD DELCOLLO LLP**
29 Broadway, Suite 2311
New York, NY 10006
Telephone: (858) 402-0209
Facsimile: (858) 402-0209

Attorneys for Defendant
Best Western International, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT, BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**<br><br>**Date: November 24, 2025**<br>**Time: 1:45 p.m.**<br>**Dept.: C15**<br>**Before The Honorable Michael Strickroth**<br><br>**Reservation No.: 74617672**<br><br>Action Filed: June 17, 2025<br>Trial Date: None Set |

/ / /

/ / /

/ / /

DODD DELCOLLO LLP

DODD DELCOLLO LLP

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION........................................................................................ 1

II. THE COURT SHOULD DISMISS THIS ACTION............................................... 3

A. Ohio is a Suitable Alternative Forum.........................................................4

B. The Public and Private Interest Factors Weigh in Favor of Trying This Matter in Ohio.....................................................................................................5

C. The Public Interest Factors Weigh in Favor of Trying this Matter in Ohio..............7

D. The District Court for the Northern District of California Recently Granted a Motion to Transfer Venue in a Case from California to Minnesota.........................8

III. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT.............................. 9

IV. CONCLUSION........................................................................................... 9

## TABLE OF AUTHORITIES

**Cases** **Page**

*Boaz v. Boyle & Co., Inc.*
(1995) 40 Cal.App.4th 700, 711……………………………………………….…………………4

*Hansen v. Owens-Corning Fiberglass Corp.*
(1996) 51 Cal.App.4th 753, 760………………………………..…………………..…6,7,8

*Int'l Shoe v. Washington*
(1945) 326 U.S. 310……………………………………..……………………...……3

*Jane Doe v. Uber Technologies, Inc.*
N.D. Cal. Case No. 17-cv-00950-WHO…………………………………………………….8

*Morris v. AFGA Corp.*
(2006) 144 Cal.App.4th 1452…………………………………………….……..…….……..6

*Piper Aircraft Co. v. Reyno*
(1981) 454 U.S. 235, 254………………………………………………….…….….……….5

*Price v. Atchison, T & S.F. Railway Co.*
(1954) 42 Cal.2d 457………………………………………………………...……..3, 4

*Shiley Inc. v. Super. Ct.*
(1992) 4 Cal.App.4th 126, 132-133…………………….………..……….….……….3,4,5

*Stangvik v. Shiley, Inc.*
(1991) 54 Cal.3d 744, 751…………………………………….……………..……3,4,5, 6,7,9

DODD DELCOLLO LLP

DODD DELCOLLO LLP

**Statutes** **Page**

Civil Code, Section 395, subdivision (a)……………………………......….………………… …….2,3

California Code of Civil Procedure Section 410.10……………….…………………………...2,3

Code Civil Procedure Section 410.30, subdivision (a)…………………….…………………..…… 9

California Code of Civil Procedure Section 418.10, subdivision (a)……………………………….4

Code of Civil Procedure Section 418.10, subdivision (b)……………………...…………..……….4

Ohio Civil Rule 45………………………………………………………………………………..6

Ohio Rules of Civil Procedure Rule 3(A)(C)…………………………………………………..……5

Ohio Revised Code Section 2307.011……………………………………………………...……….2

Ohio Revised Code Section 2305.10 (2020)………………………………………………………..5

Defendant, BEST WESTERN INTERNATIONAL, INC. (hereinafter "Defendant") hereby submits the following memorandum of points and authorities in support of its motion to dismiss the case based on *forum non conveniens*.

## I. **INTRODUCTION**

This case arises out of an alleged incident that occurred entirely in Strongsville, Ohio, over 2,335 miles away from the Central Justice Center Courthouse of Orange County where this suit was filed. Plaintiff, Memory Lane, Inc. (hereinafter "Plaintiff") alleges that on April 17, 2024, it shipped 54 rare vintage baseball cards (hereinafter "Vintage Cards") to Best Western Plus Strongsville (hereinafter "Hotel") in Strongsville, Ohio, for safe keeping until its representative, Joe Tomasulo, arrived for Strongsville Sports Collectors Convention to display the 54 Vintage Cards.

Mr. Tomasulo arrived at the Hotel on April 18, 2024, for his stay attempting to pick up the Vintage Cards but they could not be located. According to Plaintiff, the Vintage Cards were not stored in a secure place and were allegedly stolen by one of the Hotel's employees on duty while the Vintage Cards were in the Hotel's custody and control. Plaintiff claims damages as a result. (See Declaration of Daniel Ryan (hereinafter "Ryan Decl.") ¶ 2, Ex. A, Complaint, p. 2)

Plaintiff puts the Hotel's hiring of employee Jacob Paxton in Ohio at issue in its complaint. *(Id.)* Even though this matter has nothing to with Los Angeles County and California, Plaintiff filed this lawsuit in California. Plaintiff clearly is forum shopping by filing this action in California instead of Ohio, hoping to receive a more favorable outcome in California, due to its historically liberal jury pool. This is blatant forum shopping. The Court should exercise its discretion to dismiss, or alternatively stay Plaintiff's complaint based on the doctrine of *forum non conveniens.*

Defendant moving party, and other defendants, the Hotel, Cleveland Strongsville Hospitality LLC, and Twin Tier Hospitality LLC, and the alleged thief, Mr. Paxton, are the most critical witnesses and are presumably not subject to personal jurisdiction in California. Although Plaintiff is a corporation qualified to do business in California and subject to jurisdiction in California, Defendant is a corporation with its principal place of business in Phoenix, Arizona. Upon information and belief, Defendant Twin Tier is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio; and Defendant Cleveland Strongsville Hospitality LLC ("Hotel") is a

Pennsylvania limited liability company with its principal place of business in Westlake, Ohio, and is doing business under the trade name Best Western Plus Strongsville in Strongsville, Ohio; and Hotel's alleged negligent conduct is subject to the tort laws in Ohio (Ohio Revised Code section 2307.011, et seq.) These laws are different than those in California. Pursuant to the applicable statutes and regulations in Ohio, Hotel applied for and was provided a business license by the State of Ohio. Ohio is governed by its own state laws as to providing business licenses within that state.

The incident occurred in Ohio; therefore, crucial evidence is in Ohio, including the body cam video referenced in Plaintiff's complaint. The investigation completed by Strongsville Police Department officers regarding the property stolen by the Hotel employee, is located in Ohio; as are witnesses who saw Plaintiff before and after the incident; and any investigation officers, managers and/or employees of the Hotel with knowledge of Plaintiff's alleged damages immediately after the incident. Even more to the point, Plaintiff's Complaint is based entirely on Hotel's employee's conduct--the alleged acts or omissions--that took place entirely in Strongsville, Ohio.

Based on the foregoing and forthcoming, Strongsville, Ohio is a more suitable alternative forum because this negligence action is not time-barred by the Ohio statute of limitations. Plaintiff may obtain a legal remedy for its claim in Strongsville, Ohio, and the private and public interest factors weigh ***heavily*** in favor of Ohio retaining jurisdiction over this matter.

Plaintiff's Complaint pleads a California court may exercise jurisdiction on any basis is inconsistent with the California Constitution or the United States Constitution pursuant to California Code of Civil Procedure section 410.10 and relies on the mere fact Defendant conducts business in California and other states to argue this is the proper forum. However, also relevant to Section 395, subd. (a), which provides the following:

> If the action is for injury to person or personal property or for death from wrongful act or negligence, the superior court in either the county where the injury occurs or the injury causing death occurs or the county where the defendants, or some of them reside at the commencement of the action, is a proper court for the trial of the action. Civ. Code, § 395, subd. (a).)

Accordingly, Section 395(a) specifically identifies the **<u>county where the injury occurred</u>** as a proper forum for the action. Again, Plaintiff's complaint acknowledges that the alleged theft occurred





DODD DELCOLLO LLP

in Ohio. Defendant conducts business in all states, but other highly relevant factors outlined below must be considered in determining whether to grant this motion.

The *only* substantive connection the parties have with Orange County is that Plaintiff claims that it is located there. More important is the alleged negligent conduct Plaintiff claims all Defendants engaged in occurred in Ohio. All crucial witnesses, including the Strongsville Police Department officers, the Hotel employees and Mr. Paxton, witnesses who saw Plaintiff before and after the incident; and any investigation officers, managers and/or employees of the Hotel with knowledge of Plaintiff's alleged damages immediately after the incident which occurred in Ohio, not California. Whatever physical evidence exists is in Ohio. Mr. Paxton is incarcerated in Ohio. Plaintiff attempts to plead around the foregoing realities by alleging Plaintiff secured the hotel room reservation and contracted with the Hotel in Orange County and regularly books hotel rooms in Orange County. However, these averments are only relevant to establish personal jurisdiction, not the proper forum. (*See* Civ. Code, § 410.10; *Int'l Shoe v. Washington* (1945) 326 U.S. 310; *compare* Civ. Code, § 395.)

DODD DELCOLLO LLP

In balancing the countervailing interests, the balance weighs strongly in favor of this court dismissing this action, as Ohio is a more suitable forum. For these reasons, and as set forth in further detail below, the Court should dismiss this matter based on the doctrine of *forum non conveniens.*

## II. THE COURT SHOULD DISMISS THIS ACTION

*Forum non conveniens* is "an equitable doctrine invoking the discretionary power of a court to decline the exercise of jurisdiction (to stay or dismiss) it has over a transitory cause of action when it believes the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751.) The doctrine was first applied by the California Supreme Court in *Price v. Atchison, T & S.F. Railway Co*. (1954) 42 Cal.2d 457. In *Price*, the Supreme Court aptly described the need for this doctrine:

> There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned. . . .
> [T]he injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state . . . require that our courts, acting upon the equitable principles . . . exercise their discretionary power to decline to proceed in those causes of action

> which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere.

(*Price, supra,* 42Cal.2d at 582-84 [internal citations and quotations omitted].)

The doctrine of forum non conveniens is now codified by California Code of Civil Procedure section 418.10, subdivision (a), which provides:

> When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just.

Code of Civil Procedure section 418.10, subdivision (b) further provides that a defendant may respond to a complaint by moving to stay or quash the action on the ground of inconvenient forum. In determining whether the action should be heard in a different forum, the court engages in a two-step analysis. (*Stangvik*, *supra*, 54 Cal.3d at 751.) The court first must determine whether a suitable alternative forum exists. If a suitable alternative forum exists, the court must consider the private interests of the parties and the public interest in keeping the case in California. (*Id*. at 751, 754.) Here, Ohio is a suitable alternative forum, and all factors—both public and private—weigh in favor of requiring Plaintiff to litigate in that forum.

**A. Ohio is a Suitable Alternative Forum**

A "suitable" alternative forum is one in which a valid judgment may be obtained against the defendant. (*Stangvik, supra*, 54 Cal.3d at 752). The defendant must either be subject to service of process there or be willing to submit to jurisdiction as a condition of the court granting the motion. (*Id*.) Also, the action must not be barred by the statute of limitations. (*Id.; Shiley Inc. v. Super. Ct.* (1992) 4 Cal.App.4th 126, 132-133.) Additionally, the alternative forum must provide some remedy for the claim sued upon. The other forum's law need not be as favorable to plaintiffs as local law. (*Stangvik*, *supra*, 54 Cal.3d at 764; see also *Boaz v. Boyle & Co., Inc.* (1995) 40 Cal.App.4th 700, 711.) Critically, "[t]he fact that a plaintiff will be disadvantaged by the law of [the alternative forum], or that the plaintiff will probably or even certainly lose does not render the forum 'unsuitable'[.]" (*Boaz v. Boyle & Co., Inc*. (1995) 40 Cal.App.4th 700 ,711.)

Simply put, the alternative forum's law is **irrelevant** unless the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy at all. (*Stangvik*, *supra*, 54 Cal.3d at 764; *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 254.) The "no remedy at all" exception applies only in rare circumstances, "such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." (*Shiley Inc.*, *supra*, 4 Cal.App.4th at 134-35.) The "no remedy at all" exception has "***never* been applied to a sister state**." (*Id.* [emphasis added].)

Here, Ohio provides a suitable and appropriate alternative. First, the Hotel is subject to jurisdiction there, as it engages business within Ohio (OH RCP Rule 3(A)(C)). Second, Defendants Hotel and Twin Tier are indispensable parties involved in the incident, are both Ohio businesses engaged in commerce and, therefore, also subject to jurisdiction in Ohio. Third, the incident giving rise to this lawsuit occurred in Ohio. Fourth, Ohio provides a remedy for Plaintiff's alleged injuries and damages, and none of its claims are barred by the statute of limitations. As set forth above, Plaintiff alleges negligence against all Defendants and damages caused by a theft of property in Ohio. The applicable statute of limitations in Ohio for lawsuits involving property damage is two years from the date of the incident in (OH RC §2305.10 (2020). Plaintiff's Complaint alleges the underlying incident occurred on April 18, 2024; thus, no statute of limitations has run on Plaintiff's claims. Thus, Ohio is a suitable alternative forum.

**B. <u>The Public and Private Interest Factors Weigh in Favor of Trying This Matter in Ohio</u>**

In applying the *Stangvik* factors, courts must weigh the private and public interests involved actiononce it determines the alternative forum is suitable. The jurisdiction with the greater interest in the litigation normally should bear the burden of entertaining it. (*Stangvik*, *supra*, 54 Cal.3d at 758.) "[P]rivate and public interest factors must be applied flexibly, without giving undue emphasis to any one element." (*Id.* at 753.)

**1. Private Interest Factors**

The private interest factors include (i) access to proof, (ii) cost of obtaining witness attendance, and (iii) the availability of compulsory process for attendance of unwilling witnesses.





DODD DELCOLLO LLP

The private interest factors are primarily focused on making "trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive." (*Stangvik, supra*. 54 Cal.3d 751; *Morris v. AFGA Corp*. (2006) 144 Cal.App.4th 1452; *Hansen v. Owens-Corning Fiberglass Corp.* (1996) 51 Cal.App.4th 753, 760.)

Here, the private interest factors weigh heavily in favor of litigating this action in Ohio. As set forth above, this matter arises out of an alleged negligent act and omission occurring entirely in Strongsville, Ohio; thus, key evidence and jurisdiction over it are in Ohio. Hotel personnel are key witnesses and its principal place of business is in Ohio. (Ryan Decl. ¶ 6, Ex. B.) Nearly every potential witness to the incident presumably resides in Ohio, including people with whom Plaintiff was with before and immediately after the incident such as the Strongsville Police Department officers, the Hotel employee Paxton, the hotel manager at the Hotel, other employees of the Hotel, Twin Tier personnel, and possible witnesses who saw Plaintiff. Should this action remain in California, seemingly none of those witnesses can be compelled to appear in California Superior Court; neither can Defendant Hotel – the most critical witness besides Mr. Paxton and Plaintiff. Even assuming they could be compelled to testify, said Ohio witnesses would be required to travel great distances and at great cost to participate in the case. Thus, the cost of obtaining attendance of the out-of-state witnesses will be much greater than if the case were litigated in Ohio, where those witnesses likely reside.

Additionally, nearly all physical and documentary evidence is in Ohio. The Hotel and former employee, Paxton, where the incident allegedly occurred are all located in Ohio. Defendant Hotel business license, history, and background information can be found in Ohio. Video evidence, and/or police report as well as the corresponding investigative report are in Ohio. As such, to the extent Defendant and other parties seek to obtain this evidence, they will be required to issue out-of-state subpoenas for records and testimony. This will require Defendant and all parties to submit every single subpoena to the County Court Clerk in Strongsville, Ohio. (OH CRP 45). The clerk will then issue a subpoena for service upon the person to which the foreign subpoena is directed. This procedure will cause undue expense and burden on Defendant and other parties, and is, quite simply, an unnecessary waste of time, money and judicial resources in both Ohio and California.

**C. <u>The Public Interest Factors Weigh in Favor of Trying this Matter in Ohio</u>**

The public interest factors include (i) avoidance of overburdening local courts with congested calendars, (ii) protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and (iii) weighing the competing interests of California and the alternate jurisdiction in the litigation. (*Stangvik*, *supra*, 54 Cal.3d at 751, 758.)

Here, too, the public interest factors weigh highly in favor of granting this motion. Dismissing the action on forum non conveniens grounds would aid in avoiding the potential overburdening of the Court's calendar. This Court certainly has a significant number of cases on its docket without having to hear a case with no relation to Orange County. Moreover, the people of Orange County should not be forced to endure a lengthy trial related to a matter that is entirely unrelated to their community, the outcome of which they have little stake over. Indeed, there is no reason Orange County residents should be called upon to decide whether Defendant and other Defendants complied with Ohio rules and regulations or whether Defendant is somehow responsible for the alleged negligence of Hotel, for an incident which occurred entirely in Strongsville, Ohio. Moreover, the independent Hotel is in and does business in Strongsville, Ohio. (Ryan Decl., ¶ 9, Ex. B.) Strongsville, Ohio laws govern certain requirements to operate as a business showing the city's interest in this arena on behalf of the public.

The people of Strongsville, on the other hand, have not only an interest, but also the right to have this matter heard in their state. The allegations in Plaintiff's Complaint involve a local controversy—that is, the alleged negligence of a Strongsville, Ohio business that allegedly led to an incident in Strongsville that will matter to the local community. By filing in California, Plaintiff is (1) attempting to forum shop to presumably prevent Defendant and other defendants from having access to necessary witnesses and evidence such that it will be burdened to overcome such obstacles in litigating this matter; and (2) and to obtain the best results for this lawsuit as California is historically more liberal than Ohio.

Accordingly, the public interest factors weigh in favor of granting Defendant's Motion to Dismiss, as California has little interest in this litigation. Indeed, as the *Hansen* court observed:

> California courts ... have little or no interest in litigation involving injuries incurred outside of California by nonresidents. It seems unduly burdensome for California residents to be expected to serve as jurors on a

> case having so little to do with California. The competing interests of California and [the alternative forum] strongly weigh in favor of litigating this matter in [the alternative forum]."

(*Hansen* , *supra*, 51 Cal.App.4th at 760.)

**D. <u>The District Court for the Northern District of California Recently Granted a Motion to Transfer Venue in a Case from California to Minnesota</u>**

In May 2017, Uber moved to transfer venue in a case involving allegations from the Northern District of California to Minnesota. (Order Granting Motion to Transfer in *Jane Doe v. Uber Technologies, Inc.*, N.D. Cal. Case No. 17-cv-00950-WHO.) Judge Orrick granted the motion, ruling Uber met its burden of demonstrating the case should be transferred to a district court in Minnesota for the convenience of the parties and witnesses, and in the interest of justice.

More specifically, Judge Orrick ruled the plaintiff's choice of forum deserves minimal deference because the disputed events giving rise to that action did not occur in California. He also held it would be cheaper and more efficient to litigate the case in Minnesota where the overwhelming majority of witnesses identified by the parties reside. Notably, he found Uber's defense would be hampered by an inability to subpoena critical, out-of-state witnesses to testify at trial. Regarding access to evidence, Judge Orrick ruled this factor weighed strongly in favor of transfer because all critical evidence regarding the claim and damages suffered was located in Minnesota and because essential witnesses resided in Minnesota and were not subject to the Court's subpoena power. Finally, Judge Orrick found Minnesota's interest in the case "substantial" because all activities giving rise to the claim occurred there, and because Minnesota has a greater interest in protecting Minnesota citizens. Further, he found Minnesota's interest in the conduct of corporations comparable to the interests of Californians.

The same rationale applies here. Pertinent witnesses, including most of the parties involved, are presumably residents of Ohio and none of the alleged events giving rise to this lawsuit occurred in California. Also, as in the Northern District case, it would be far cheaper and more efficient to litigate this case where the majority, if not all, of witnesses and evidence are located, and where all of the parties have the ability to subpoena those witnesses. Finally, Ohio's interest in this case is substantial

as the alleged events happened there, and the community there has a greater interest in hearing an alleged incident that occurred there.

## III. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT

When a trial court determines a forum other than California is more convenient, it has the option either to dismiss or to stay the California action. (Code Civ. Proc., § 410.30, subd. (a).) Staying the action and retaining jurisdiction permits the court to make such further orders as might become appropriate. (*Stangvik*, *supra*, 54 Cal.3d at 750.) For all the reasons stated herein, California has no interest in this litigation, and the Court should, therefore, dismiss Plaintiff's Complaint.

## IV. CONCLUSION

When all pertinent factors are considered, Ohio is a far more appropriate and convenient forum for all of the parties and witnesses to this action, and for the people of Orange County. As such, this matter should be litigated in Ohio. For all of the foregoing reasons, the Court should dismiss Plaintiff's complaint based on the doctrine of forum non conveniens. If, however, the Court is not inclined to dismiss the complaint, then at a minimum, it should stay the action, pending Plaintiff's filing of a complaint in Ohio.

Dated: July 25, 2025

**DODD DELCOLLO LLP**

By: ______________________
Daniel Ryan
Attorneys for Defendant
Best Western International, Inc.

Electronically Filed by Superior Court of California, County of Orange, 07/25/2025 01:39:00 PM.
30-2025-01490396-CU-BT-CJC - ROA # 15 - DAVID H. YAMASAKI, Clerk of the Court By E. efilinguser, Deputy Clerk.

Daniel Ryan (State Bar No. 206214)
dryan@dodddelcollo.com
**DODD DELCOLLO LLP**
29 Broadway, Suite 2311
New York, NY 10006
Telephone: (858) 402-0209
Facsimile: (858) 402-0209

Attorneys for Defendant Best Western International, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**DECLARATION OF DANIEL RYAN IN SUPPORT OF DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**<br><br>**Date: November 24, 2025**<br>**Time: 1:45 p.m.**<br>**Dept.: C15**<br>**Before The Honorable Michael Strickroth**<br><br>**Reservation No.: 74617672**<br><br>Action Filed: June 17, 2025<br>Trial Date: None Set |

I, Daniel Ryan, declare as follows:

1. I am an attorney duly licensed to practice law before all of the courts of the State of California and am a senior counsel with the law firm of Dodd DelCollo, LLP, attorneys of record for Defendant BEST WESTERN INTERNATIONAL, INC. (hereinafter "Defendant" or "Best Western") in the above-captioned case. I am familiar with the facts and proceedings of this case and if called as a witness, I could and would competently testify to the following facts of my own personal knowledge.

/ / /



DODD DELCOLLO LLP

2. Plaintiff filed this action on June 17, 2025, in the Central Justic Center of Orange County against Defendant, Best Western; Defendant, Twin Tier Hospitality, LLC ("Defendant Twin Tier"); Defendant, Cleveland Strongsville Hospitality, LLC ("Hotel"); and DOES 1 through 10 for negligence arising out of a theft of valuable items that occurred over 2,335 miles away in Strongsville, Ohio.

3. Plaintiff alleges in its Complaint that on or about April 17, 2024, it shipped 54 rare vintage baseball cards (hereinafter "Vintage Cards") to Best Western Plus Strongsville (hereinafter "Hotel") in Strongsville, Ohio, for safe keeping until its representative arrived, however when the representative arrived for his stay and attempted to pick up the Vintage Cards on April 18, 2024, the Hotel could not locate the Vintage Cards. It was later learned that the Vintage Cards were not stored in a secure place and were stolen by one of the Hotel's employees on duty while the Vintage Cards were in the Hotel's custody and control. Plaintiff claims damages as a result. (Attached as **Exhibit A** is Plaintiff's Complaint.)

4. The Complaint alleges causes of action for unfair business practices pursuant to Cal. Bus. Prof. Code §17200, et seq.; false advertising pursuant to Cal. Bus. Prof. Code §17500; fraud; negligent misrepresentation; negligence; negligent hiring, supervision, or retention; bailment; and conversion. Plaintiff also puts the Hotel's hiring of Mr. Paxton and failing to take reasonable precautions to guard against the risk of theft at issue.

5. Plaintiff's Complaint pleads Defendant works in concert with the other Defendants to advertise the Best Western brand to prospective consumers who reside in California. Plaintiff entered into a business transaction when MLI booked a room with the Hotel in Orange County, California believing that the Hotel was synonymous with the Best Western brand and pleads a California court may exercise jurisdiction on any basis not consistent with the California Constitution or of the United States Constitution pursuant to *California Code of Civil Procedure* §410.10. Plaintiff relies on the fact that Defendant is a franchisor with hotels that conduct business in California to support that Orange County is the proper forum. Notably, Defendant Best Western conducts business in all states as well as internationally.

6. Plaintiff is a California corporation qualified to do business in Orange County, CA.

7. Defendant is a corporation with its principal place of business in Phoenix, Arizona.

8. Upon information and belief, Defendant Twin Tier is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio.

9. Upon information and belief, Defendant Hotel is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio, and doing business under the trade name the Hotel in Strongsville, Ohio.

10. Plaintiff further pleads that it that Best Western's advertising creates the perception that a single enterprise owns, operates, controls, supervises, and manages Best Western branded hotels, and the impression that Best Western branded hotels are subject to centralized and unified operational control and standards to persuade customers who reside in California who want to book a hotel room at, among other locations, with the Hotel. Other highly relevant factors must be considered in determining whether to grant this motion including the corporate locations of other defendants, where the incident occurred, where key evidence and witnesses are located, and the private and public interest factors which all weigh in favor of trying this matter in Stongsville, Ohio.

11. The Ohio Revised Code section 2307.011, et seq. and OH RC §2305.10 govern tort claims in the State of Ohio for property damage and other torts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 25th day of July 2025, at Ventura, California.

Daniel Ryan

# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 06/17/2025 12:08:18 PM.
30-2025-01490396-CU-BT-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

*FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANTS:**
***(AVISO AL DEMANDADO):***
BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC,; AND DOES 1 THROUGH 10

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
MEMORY LANE, INC.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov)*, en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org)*, en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Orange
Central Justice Center
700 Civic Center Drive West
Santa Ana, CA 92701

CASE NUMBER: *(Número del Caso):* 30-2025-01490396-CU-BT-CJC
Judge Michael Strickroth

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ELLIS GEORGE LLP, Keith J. Wesley (SBN 229276)
2121 Avenue of the Stars, 30th Floor, Los Angeles, California 90067 Tel. 310-274-7100 / Fax: 310-275-5697)

DATE: *(Fecha)* 06/17/2025 DAVID H. YAMASAKI, Clerk of the Court
Clerk, by *(Secretario)* [signature] K. Climer, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* BEST WESTERN INTERNATIONAL, INC.
   under:
   - ☒ CCP 416.10 (corporation)
   - ☐ CCP 416.20 (defunct corporation)
   - ☐ CCP 416.40 (association or partnership)
   - ☐ CCP 416.60 (minor)
   - ☐ CCP 416.70 (conservatee)
   - ☐ CCP 416.90 (authorized person)
   - ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Electronically Filed by Superior Court of California, County of Orange, 06/17/2025 12:08:18 PM.
30-2025-01490396-CU-BT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

ELLIS GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Memory Lane, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**PLAINTIFF MEMORY LANE INC.'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial Date: None Set<br><br>**Assigned for All Purposes**<br>Judge Michael Strickroth |

Plaintiff Memory Lane, Inc. ("MLI") alleges as follows for its Complaint against defendants Best Western International, Inc. ("BWI"), Twin Tier Hospitality L.L.C. ("TTH") and Cleveland Strongsville Hospitality LLC ("CSH"), operating under the trade name Best Western Plus Strongsville ("BWPS") (collectively, "Best Western" or "Defendants"):

## INTRODUCTION

1. MLI is a sports memorabilia dealer. Among other things, MLI takes on consignment merchandise, including vintage baseball cards, that owners (*i.e.*, consignors) wish to place on sale through auctions.

2. In April 2024, MLI sent Joe Tomasulo to attend a trade show being held in Strongsville, Ohio, at the Strongsville Sports Collectors Convention (the "SSCC"). Mr. Tomasulo attended the SSCC, in part, to display 54 rare vintage baseball cards that were in the winter 2024 auction, which were valued at over $2 million (the "Vintage Cards").

3. For Mr. Tomasulo's hotel accommodations, MLI reserved a room at Best Western's location in Strongsville, Ohio. Best Western nationally advertises its commitment to ensuring the safety of its guests and the property guests entrust to Best Western for safekeeping. Based on the cumulative impact of Best Western's advertising and, specifically advertising targeting residents of Orange County, California, MLI relied on Best Western's advertised assurance to conclude that Best Western was a trustworthy national brand whose advertising was truthful and not misleading.

4. Relying on the cumulative effect of Best Western's deceptive advertising campaigns, MLI entrusted its Vintage Cards to Best Western for safekeeping. Best Western, however, allowed one of its personnel, Jacob Paxton, to steal the Vintage Cards. The Strongsville Police Department ("SPD") later apprehended Mr. Paxton, who admitted to the theft and pled guilty. On or about December 16, 2024, the Cuyahoga County Court of Common Pleas sentenced Mr. Paxton to a prison term of four to six years. In SPD body camera footage, Best Western's general manager admitted that Best Western failed to take reasonable precautions to safeguard MLI's property because the loss of such a property is just "an insurance claim" to Best Western.

5. Best Western's advertising was patently misleading because it failed to disclose

that Best Western does not undertake any steps to honor its advertised commitment for a uniform guest experience characterized by the safety of its guests and their property as a top priority. Best Western's advertising also failed to disclose that Best Western's internal policy is that property guests entrust to Best Western for safekeeping is just "an insurance claim" and unworthy of any safeguards to protect against loss or theft. Best Western's advertising is also likely to mislead reasonable consumers about the relationship between it and BWPS.

6. Had Best Western's advertising not been false and misleading, MLI would have selected another hotel brand that honors advertised commitments for the safety of guests and their property.

**PARTIES**

7. Plaintiff MLI is a California corporation with its principal place of business in Orange County, California.

8. MLI is informed and believes, and thereon alleges, that defendant BWI is an Arizona corporation with its principal place of business in Phoenix, Arizona.

9. MLI is informed and believes, and thereon alleges, that defendant TTH is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio.

10. MLI is informed and believes, and thereon alleges, that defendant CSH is a Pennsylvania limited liability company with its principal place of business in Westlake, Ohio, doing business under the trade name BWPS.

11. The true names and capacities of the defendants sued herein as Does 1 through 10 are currently unknown to MLI, who therefore sues such defendants by fictitious names. Each of the defendants designated as a Doe defendant is legally responsible for the unlawful acts alleged herein. MLI will seek leave of court to amend the complaint to reflect the true names and capacities of the Doe defendants when such identities become known.

12. Defendants' actions combined to create an indivisible harm such that each of the Defendants is jointly and severally liable for the injuries MLI suffered as alleged herein. Defendants' wrongful conduct as alleged herein induced MLI to believe that each of the Defendants had apparent or ostensible authority to act on behalf of one another. Defendants,

furthermore, knew about and agreed amongst each other to engage in the wrongful acts and omission alleged herein.

13. There now exists, and at all relevant times, there has existed, a unity of interests between all defendants such that separate personalities no longer exist, and it would be inequitable to treat the acts alleged herein as the acts of a single defendant alone. Defendants were conceived and intended, and have been used, as a device to avoid liability. Defendants constitute but one enterprise, and this enterprise has been so handled such that it should respond, as a whole, for damages arising from their conduct.

## ALLEGATIONS

14. Defendants solicit business in California, and Defendants entered into a business transaction with MLI in Orange County, California, when MLI booked a room with BWPS.

15. Defendants work in concert to advertise the Best Western brand to prospective consumers who reside in California and are interested in booking a hotel room at, among other locations, BWPS. Among other things, Defendants advertise Best Western's commitment to superior customer care, excellent customer experience, and a myriad of other benefits Best Western offers.

16. Best Western deploys long-term advertising schemes that seek to persuade customers to book hotel rooms and other services through Best Western based on the cumulative impact of the advertising. Best Western's advertising creates the perception that a single enterprise owns, operates, controls, supervises, and manages Best Western branded hotels. Among other things, Best Western advertises on https://www.bestwestern.com/en_US.html. The website address for BWPS specifically is https://www.bestwestern.com/en_US/book/hotels-in-strongsville/best-western-plus-strongsville-cleveland/propertyCode.36178.html. Best Western's advertising creates the impression that Best Western branded hotels are subject to centralized and unified operational control and standards.

17. Best Western engages in advertising campaigns directed to California residents, such as, for example, "Life's a Trip" and "I'm Doing Alright, Three Bonus Nights," including those residing in Orange County. Best Western's advertising campaigns include all forms of

media such as paid internet advertising, television, radio, and print media. The aim of Best Western's advertising campaigns is to solicit prospective customers – including those in this County – to visit its website and complete transactions for room rentals, including hotel accommodations in Strongsville, Ohio.

18. The specific BWI website page that advertises the BWPS property states that its "outstanding service makes us one of the most preferred hotels in the Cleveland Airport area." It further describes its amenities and advertises BWPS as "a full-service hotel near the Cleveland Airport, [which] offers business travelers a quiet, convenient location near many local and national businesses and corporate headquarters." It invites "business traveler[s]" to "make your reservation today and secure your room at our Strongsville hotel and experience all the comfort and amenities of home." Best Western further advertised secure storage for guest property at its front desk.

19. Best Western's advertised representations and assurances induced MLI to conclude that Best Western would undertake reasonable precautions to ensure the safety of its Vintage Cards, if it selected BWPS for its hotel accommodations. Best Western's advertising further induced MLI to rely on Best Western's assurance of the uniform quality of Best Western-branded locations and Best Western's uniform commitment to each Best Western location's adherence to company-wide standards. Best Western's advertising also induced MLI to conclude that it could rely on Best Western's assurances concerning the safety and reliability of the services it offered. Best Western's advertising did not disclose that Best Western views property guests entrust to Best Western for safekeeping as just "an insurance claim" and unworthy of any safeguards to protect against loss or theft.

20. MLI accordingly decided to ship the Vintage Cards from Orange County, California, to BWPS for safekeeping, which it did by FedEx on April 16, 2024. BWPS received the Vintage Cards on or about April 17, 2024, and it agreed to accept delivery of the Vintage Cards. In so doing, BWPS undertook a duty to exercise reasonable care for the safekeeping of the Vintage Cards until MLI's representative took possession of them. BWPS had secured areas where it could have stored the Vintage Cards during the time they were within BWPS' possession, custody and control.

21. When Mr. Tomasulo attempted to pick up the Vintage Cards on April 18, 2024, BWPS stated that the Vintage Cards could not be found. The SPD responded to a call concerning the loss of the Vintage Cards the same day. The body camera of the SPD officer who responded to the call recorded his interaction with BWPS' general manager.

22. BWPS' general manager admitted on camera that BWPS received the package, and he admitted that BWPS does not place packages in secure storage because the loss of customer property is just "an insurance claim" for BWPS. Instead, BWPS simply placed MLI's package on a desk with unfettered access to any passer-by. Even though BWPS has surveillance cameras at other locations around the hotel, BWPS' general manager further admitted on camera that BWPS left the Vintage Cards in an area where there was no surveillance camera or footage.

23. As the SPD's investigation revealed, between the April 17, 2024, delivery and Mr. Tomasulo's effort to take delivery on April 18, 2024, BWPS allowed one of its personnel, Jacob Paxton, to steal the Vintage Cards. Mr. Paxton was one of BWPS' personnel on duty during the time of the theft and acted with apparent or ostensible authority on behalf of Best Western. Mr. Paxton later admitted to the theft and was sentenced to a prison term of four to six years.

24. Best Western knew or should have known that retaining Mr. Paxton as an employee created a particular risk or hazard of the theft of valuable items its guests entrusted to BWPS for safekeeping, including MLI's Vintage Cards. BWPS knew, or should have known, that a substantial number of its guests were staying at BWPS to attend the SSCC and were shipping rare and valuable collectibles to BWPS for safekeeping. Indeed, BWPS segregated a block of rooms specifically for guests attending the SSCC trade show called the "Sports Card Show" block of rooms. BWPS' records reflect that forty-six individuals reserved rooms within the "Sports Card Show" block of rooms, many of whom reserved multiple rooms. On information and belief, BWPS knew that, prior to the Vintage Card theft, a series of thefts had occurred at BWPS, including packages BWPS guests entrusted to it for safekeeping, yet Best Western did not notify any of the guests in the Sports Card Show block of this critical fact. On information and belief, the thefts coincided with BWPS' employment of Mr. Paxton, and BWPS personnel suspected that Mr. Paxton was responsible for the thefts.

25. BWPS failed to conduct an adequate investigation of Mr. Paxton prior to hiring him. On information and belief, Mr. Paxton was the night shift auditor for the Comfort Inn prior to his employment with BWPS. During Mr. Paxton's employment, the Comfort Inn experienced a string of thefts of packages customers shipped to the Comfort Inn. The Comfort Inn suspected Mr. Paxton of the thefts. As the Comfort Inn was on the verge of terminating Mr. Paxton, he quit. As the Vintage Card theft demonstrates, BWPS failed to take reasonable precautions to guard against the risk of theft Mr. Paxton posed.

26. It took the SPD over a month to recover the stolen Vintage Cards. At the time of the theft, bids on the stolen cards were already outstanding. The theft prevented MLI from completing any sales or returning the stolen Vintage Cards to their owners. The SPD never recovered two of the 54 Vintage Cards, and the cards that it did recover were and are worth less because of their involvement in the theft. Because of the theft, MLI was also forced to undertake a $1.8 million loan to repay the owners who had consigned their baseball cards to MLI for sale, which cost MLI $125,907.43 in interest. The theft, furthermore, harmed MLI's reputation in the marketplace for sports memorabilia, which created a measurable loss in MLI's revenue. BWPS' wrongful conduct and omissions also damaged MLI in connection with expenditures it made in its efforts to retrieve the Vintage Cards.

27. Defendants work in concert to exercise control of the business, operations, training, management, supervision, administration, and procedures of BWPS and engage in profit sharing. Defendants work in concert to control brand quality standards, use and placement of Best Western's name, BWPS' hotel reservation systems, brand loyalty programs, websites, advertising and marketing, and employment policies and procedures. Defendants' control over BWPS is directed towards attaining more revenue and commercial success.

28. MLI reasonably believed that BWPS was synonymous with the Best Western brand, and that anyone acting on behalf of BWPS acted with apparent or ostensible authority to act on behalf of the Best Western. Best Western advertises itself as a unified, nationwide hotel brand through consistent branding, standardized logos, uniform reservation systems, loyalty programs, and national advertising programs. Best Western creates the impression that its properties are part

of a single, cohesive enterprise. A reasonable consumer, exposed to Best Western's advertising and branding materials, would believe they are dealing directly with Best Western.

29. Best Western's misrepresentations and omissions are likely to deceive consumers, who reasonably rely on the advertised trustworthiness, legitimacy and consistency of the Best Western brand in making hotel reservations.

**FIRST CAUSE OF ACTION**

**(Unfair Business Practices in Violation of Cal. Bus. Prof. Code §17200, et seq.)**

30. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

31. Defendants' advertising was likely to deceive or mislead reasonable customers.

32. MLI reasonably relied on and was damaged by Defendants' unlawful, unfair, fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

33. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair, and/or fraudulent business practices in that MLI entrusted its property to Defendants for safekeeping based on Defendants' advertised assurances.

34. MLI suffered injury in fact, and has lost money and property, as result of Defendants' unlawful, unfair, fraudulent and/or deceptive business practices, including (but not limited to) the value of two of the Vintage Cards that were never recovered, the decline in value of the Vintage Cards that were recovered, $125,907.43 in interest on the loan MLI was forced to undertake, the expenditures MLI made in its efforts to retrieve the Vintage Cards, and the amounts paid to stay at a hotel that did not provide the services it advertised.

35. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI for restitution in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**(False Advertising in Violation of Cal. Bus. Prof. Code §17500)**

36. MLI hereby realleges and incorporates by reference the allegations set forth in

paragraphs 1 through 35 as though fully set forth herein.

37. Through their advertising, Defendants intended to offer to members of the public their advertised services.

38. Defendants' advertising was likely to deceive or mislead reasonable consumers. Defendants knew, or in the exercise of reasonable care should have known, that their advertising was untrue or misleading.

39. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair, fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

40. MLI suffered injury in fact, and has lost money and property, as result of Defendants' unlawful, unfair, fraudulent and/or deceptive business practices, including (but not limited to) the value of two of the Vintage Cards that were never recovered, the decline in value of the Vintage Cards that were recovered, $125,907.43 in interest on the loan MLI was forced to undertake, the expenditures MLI made in its efforts to retrieve the Vintage Cards, and the amounts paid to stay at a hotel that did not provide the services it advertised.

41. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI for restitution in an amount to be proven at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**(Fraud)**

42. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43. Through their advertising, Defendants made the misrepresentations and omissions alleged herein.

44. Defendants' advertising was materially false and misleading, and MLI did not know the true facts.

45. Defendants made these misrepresentations and omissions to induce MLI to enter into a business transaction with Best Western and intended to deceive MLI.

46. When Defendants made their false representations and wrongful omission, Defendants knew or recklessly disregarded that each such representation and omission was materially false and misleading, and that Defendants had no intention of performing the representations made.

47. MLI reasonably relied on, and was damaged by, Defendants' false and misleading advertising because it induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

48. Defendants' misrepresentations and omissions were a substantial factor in causing MLI's harm.

49. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

50. In performing the wrongful acts alleged above, Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of MLI's rights, reputation and business interests. By reason thereof, MLI is entitled to punitive and exemplary damages against Defendants, and each of them, in a sum to be determined by the trier of fact herein.

**FOURTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

51. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52. Through their advertising, Defendants made the misrepresentations and omissions alleged herein.

53. Defendants made these misrepresentations and omissions to induce MLI to enter into a business transaction with Best Western.

54. At the time Defendants made the misrepresentations and omissions, Defendants had no reasonable ground to believe that such representations where true.

55. MLI reasonably relied on, and was damaged by, Defendants' unlawful, unfair,

fraudulent and/or deceptive business practices in that Defendants' deceptive advertising induced MLI to enter into a business transaction with Defendants for its Best Western hotel accommodation and to ship the Vintage Cards to Best Western for safekeeping.

56. Defendants' misrepresentations and omissions were a substantial factor in causing MLI's harm.

57. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**FIFTH CAUSE OF ACTION**

**(Negligence)**

58. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59. Mr. Tomasulo, as an MLI representative, was a guest of Best Western, and MLI entrusted Best Western with the safekeeping of its property by delivering it to Best Western.

60. Best Western accepted MLI's property for safekeeping, which created a duty to exercise the degree of care a reasonably careful person would use to safeguard MLI's property from theft or loss during the time it was in Best Western's possession, custody and control.

61. Best Western failed to exercise reasonable care to safeguard MLI's property.

62. A reasonable person would have foreseen that leaving MLI's property in a location with unrestricted access to anyone passing by, and without any surveillance, created an unreasonable risk that someone would wrongfully take MLI's property.

63. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**SIXTH CAUSE OF ACTION**

**(Negligent Hiring, Supervision, or Retention)**

64. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

65. Best Western hired Mr. Paxton, whose job functions enabled him to have access to customers' valuables, including packages that Best Western received and held on customers'

behalf.

66. Mr. Paxton was unfit to have access to valuables that customers entrusted to Best Western for safekeeping.

67. Best Western knew, or should have known, that Mr. Paxton could not be trusted to have access to valuables that its customers, including MLI, entrusted to Best Western for safekeeping.

68. Mr. Paxton's unfitness for his employment with Best Western harmed MLI.

69. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**SEVENTH CAUSE OF ACTION**

**(Bailment)**

70. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71. MLI delivered its property to Best Western.

72. Best Western accepted receipt of MLI's property for safekeeping.

73. Best Western's receipt of MLI's property was incident to Best Western's business with MLI and for the mutual benefit of Best Western and MLI.

74. Best Western had a duty to exercise reasonable care to ensure the return of MLI's property to MLI.

75. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**EIGHTH CAUSE OF ACTION**

**(Conversion)**

76. MLI hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77. MLI had a right to possession of the Vintage Cards.

78. Best Western substantially interfered with MLI's right to possession of the Vintage Cards by allowing its employee access to the Vintage Cards.

79. MLI did not consent to the theft of the Vintage Cards.

80. The theft of the Vintage Cards harmed MLI in the form of the interest it paid on the loan it was required to take out to cover the value of the Vintage Cards, the value of the two Vintage Cards that were never recovered, the depreciation in value of the Vintage Cards that where recovered, and the loss of revenue arising from the reputational harm attributable to the theft of the Vintage Cards.

81. As a direct and proximate result of Defendants' wrongful conduct, Defendants are jointly and severally liable to MLI in an amount to be proven at trial but no less than $2 million.

**PRAYER FOR RELIEF**

WHEREAS, MLI prays for the following relief against Defendants:

1. For compensatory damages according to proof but no less than $2 million;

2. For restitution according to proof;

3. For exemplary and punitive damages in an amount to be determined by the trier of fact;

4. For pre-judgment and post-judgment interest on all damages awarded by this Court at the maximum legal rate as allowed by law;

5. For reasonable attorneys' fees and costs of suit incurred herein as allowed by law; and

6. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

MLI hereby demands a jury trial on all issues so triable.

DATED: June 16, 2025

ELLIS GEORGE LLP
Keith J. Wesley

By: [signature]
KEITH J. WESLEY
Attorneys for Plaintiff Memory Lane, Inc.

Case: 1:25-cv-01710-JPC Doc #: 1-2 Filed: 07/29/25 60 of 62. PageID #: 67

31689829

DODD DELCOLLO LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

| | |
|---|---|
| MEMORY LANE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BEST WESTERN INTERNATIONAL, INC.; TWIN TIER HOSPITALITY L.L.C.; CLEVELAND STRONGSVILLE HOSPITALITY LLC; AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 30-2025-01490396-CU-BT-CJC<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT, BEST WESTERN INTERNATIONAL, INC.'S MOTION TO DISMISS THE CASE BASED ON FORUM NON CONVENIENS**<br><br>**Date: November 24, 2025**<br>**Time: 1:45 p.m.**<br>**Dept.: C15**<br>**Before The Honorable Michael Strickroth**<br><br>**Reservation No.: 74617672**<br><br>Action Filed: June 17, 2025<br>Trial Date: None Set |

Defendant BEST WESTERN INTERNATIONAL, INC.'S ("Defendant") Motion to Dismiss based on Forum Non Conveniens came on regular for hearing on November 24, 2025, in Department C15 of the above-styled Court located at 700 Civic Center Drive West, Santa Ana, CA 92701.

/ / /

/ / /

/ / /

Based on the papers and arguments presented by counsel and good cause appearing therefore,

**IT IS HEREBY ORDERED:**

1. Defendant's motion is GRANTED;
2. Plaintiff's Complaint is dismissed pursuant to this Court's Order;

**IT IS SO ORDERED.**

**Date:** ________________

______________________________
**Judge of the Superior Court**

DODD DELCOLLO LLP

DODD DELCOLLO LLP